[Cite as *M.M. v. V.S.*, 2022-Ohio-1531.]

.
IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


M.M.                                                   Court of Appeals No. L-21-1176

      Appellee                                     Trial Court No. AD 19277976

v.

V.S.                                                   **DECISION AND JUDGMENT**

      Appellant                                    Decided: May 6, 2022

* * * * *

Joseph B. Clark, for appellee.

Theodore B. Tucker, III, for appellant.


* * * * *

**DUHART, J.**

{¶ 1} This is an appeal filed by appellant, V.S. ("mother"), from the August 30, 2021 judgment of the Lucas County Court of Common Pleas, Juvenile Division. For the reasons that follow, we affirm the trial court's judgment.

**{¶ 2}** Mother sets forth seven assignments of error:

1. The lower court proceeding was defective in that defendant/appellant's husband was not joined as an indispensable party to this cause at anytime during the proceeding.

2. The lower court erred in failing to admit defendant's exhibit B. and in its determination of fact that appellant had threatened that if appellee did not drop his action she would prevent him from seeing the child, get him fired or consult with "hit men" was contrary to the manifest weight of the evidence.

3. The lower court determination that it is in the best interest of the child pursuant to ORC 3109.04 that he be placed in the custody of plaintiff/appellee (be designated residential parent/legal guardian custodian) is contrary to the manifest weight of the evidence.

4. The lower court determination that defendant/appellant was difficult in working with plaintiff/appellee to establish consistent parenting time with the minor child; that she denied him parenting time and that she threatened or took action to remove the child from the jurisdiction of the court is contrary to the manifest weight of the evidence.

5. The lower court determination that on or about 02-23-2020, defendant/appellant had quit her job, purchased 2 one way tickets for herself and the child to Bulgaria and was attempting to board a plane…(it appears

that mother was making good on her threat to take the child to Bulgaria in order to keep the child from plaintiff) was contrary to the manifest weight of the evidence.

6. The lower court's determination that plaintiff's income for child support purposes is $79,040.00 as was used in the child support calculation sheet adopted by the court is contrary to the manifest weight of the evidence.

7. The lower court's determination that parenting time/visitation with the minor child should only occur within the jurisdiction of this court and the Michigan area where father (plaintiff/appellee) resides unless father (plaintiff/appellee) consents in writing and that the child's passport should be turned over to father (plaintiff/appellee) is contrary to the manifest weight of the evidence.

**Background**

{¶ 3} Mother and appellee, M.M. ("father"), were in an on and off relationship for many years, and in March 2017, D., their child ("the child") was born. When the relationship started in January 2011, mother and father were each married to other people. Mother and father's relationship ended in October 2019. Mother is still married to her husband ("husband"), and they are the parents of three adult children. Father is divorced, and he has two minor children with his former spouse. Father lives in

3.

Michigan while mother, who is originally from Bulgaria, lives in Sylvania, Ohio, with her husband and the child. The child was born in Ohio.

{¶ 4} On December 3, 2019, father filed a complaint to establish a parent-child relationship and motion to allocate parental rights and responsibilities, in Lucas County Court of Common Pleas, Juvenile Division ("trial court" or "court").

{¶ 5} On February 19, 2020, father filed an emergency motion prohibiting mother from removing the child from the trial court's jurisdiction pending further order of the court. The motion was granted that same day, and a hearing was scheduled for the next day. On February 20, 2020, an emergency hearing was held without mother in attendance. The court heard father's testimony then issued an order prohibiting the removal of the child from the court's jurisdiction pending further order of the court. The court also granted father's request for genetic testing of mother, father and the child.

{¶ 6} On February 21, 2020, mother and the child were driven to Chicago O'Hare Airport by husband, as mother and the child intended to fly to Sofia, Bulgaria, on one-way tickets that mother had purchased. However, while in the airport, mother was stopped by airport security and shown a copy of the order preventing her from removing the child from the trial court's jurisdiction. Mother and the child returned to Ohio.

{¶ 7} On March 4, 2020, the parties reached an interim consent agreement with respect to parenting time, which was memorialized in the magistrate's March 5, 2020 interim consent judgment entry. The parties subsequently agreed to modify the entry to permit the child to travel outside of the court's jurisdiction, but only as required by father

4.

to exercise his parenting time.  In addition, mother was required to surrender her passport and the child's passport to her attorney pending final determination of the case.

{¶ 8} On March 18, 2020, the results of the genetic testing were received by the trial court showing there was a 99.99999996 percent probability of paternity that father was the child's biological father.

{¶ 9} On January 27, 2021, a trial was held before a magistrate, where mother and father testified.  The parties stipulated to the genetic test results, and to a finding of father's paternity.  Father offered 14 exhibits into evidence, all of which admitted, and mother offered eight exhibits, and all of the exhibits were admitted, save for her exhibit B.  The contents of exhibit B were Discord communications (somewhat like text messages) which were exchanged between mother and father on February 14, 2020. Mother wanted to admit exhibit B while father objected, claiming it was inadmissible as an offer to settle or an attempt to come to an agreement.  The magistrate ruled the statements in exhibit B were negotiations, and struck the exhibit.  Nevertheless, mother proffered exhibit B.

{¶ 10} On February 25, 2021, the magistrate issued a decision designating father as the residential parent and legal custodian of the child, awarding mother parenting time with the child within the court's jurisdiction or in Michigan where father resides and ordering mother to surrender the child's passport to father.  On February 26, 2021, mother filed objections to the magistrate's decision, and on August 9, 2021, mother filed

5.

supplemental objections.  On August 31, 2021, the trial court affirmed and adopted the magistrate's decision.  Appellant timely appealed.

## Magistrate's Decision

{¶ 11} In her decision, as it relates to child custody, the magistrate made the following findings: father and mother were not together when the child was born; father did not begin a relationship with the child until he was eight months old; father has a stable home and stable employment; mother has a stable home with her husband and she works part-time as a nurse aide; mother and father live over 150 miles away from each other; mother has three grown children and father has parenting time with his two other children; the child has a good relationship with each parent and each parent's family; both parents provide for the child's needs while with the child; father's parenting time with the child has been inconsistent due to mother; when father and mother were in a relationship, father had parenting time, but when the relationship ended, mother denied father parenting time, in October and November 2019; after father filed the parentage/parental rights action, in December 2019, mother continued to deny father parenting time and began threatening father that if he did not drop the court case, he would never see the child again; mother is from Bulgaria and took the child there in November 2019; mother admitted saying the threats, but she did not mean what she said; father believed the threats.

{¶ 12} The magistrate also found: in February 2020, mother continued to threaten father that if he did not drop the court case, she would get him fired, consult with "hit

6.

men," and take the child to Bulgaria so father would never see the child again; mother denied making these threats, but father's testimony was credible; on February 15, 2020, father filed an emergency request to prevent mother from removing the child from the court's jurisdiction; the request was granted; on or about February 23, 2020, mother had quit her job at FedEx, purchased one-way tickets to Bulgaria for herself and the child, and attempted to board a plane to Bulgaria with the child, when she was stopped by airport security; she said she was going to visit her father for his birthday (which was weeks prior), but her testimony was not credible; "it appears that mother was making good on her threat to take the child to Bulgaria in order to keep the child from his father, as she had repeatedly threatened"; thereafter, mother agreed to father's requests for parenting time; mother was under a continuing order not to remove the child from the court's jurisdiction, yet she took the child to Chicago without father's knowledge or consent; father continues to believe mother's threat, to take the child to Bulgaria so father would never see the child again, is credible since mother told father more recently of her plan to abscond with their child through the Mexican border; father's testimony was credible; mother denies these recent threats; mother's testimony was not credible.

{¶ 13} The magistrate further found, by a preponderance of the evidence and in consideration of all of the best interest factors, including R.C. 3109.04, that an award of legal custody to father is in the child's best interest. In addition, the magistrate found mother should have parenting time with the child only within the court's jurisdiction and the Michigan area where father resides, unless father consents otherwise, in writing.

7.

Lastly, the magistrate found the child's passports should remain in father's possession, unless the parents agree otherwise.

**Judgment Entry**

{¶ 14} In the trial court's judgment entry, as it relates to child custody, the court set forth that it conducted a de novo review of the matter, including the record, the trial transcript, mother's objections to the magistrate's decision and father's response. The court denied mother's objection that the proceedings were defective for failing to name or join her husband as a party, noting the parties' stipulation to the genetic test results acted as a waiver to any challenge, and any potential oversight in not naming the husband was harmless error. The court rejected mother's objection that the magistrate erred in making a blanket statement that all of the best interest factors were considered, citing *Meyers-Decator v. Decator*, 6th Dist. Williams No. WM-09-019, 2010-Ohio-4699, ¶ 31 ("[e]ven though a court must consider the [R.C. 3109.04] factors * * *, [the court] is not required to discuss each factor in its judgment entry so long as the judgment entry is supported by some competent, credible evidence"). The court also denied mother's objection that the magistrate erred in awarding custody of the child to father, concluding the magistrate's findings were supported by competent, credible evidence and were sufficient to make an appropriate best interest determination. Finally, the court rejected mother's objections that the magistrate's findings were in error and contrary to the manifest weight of the evidence. The court noted the record was replete with testimony and evidence supporting the magistrate's findings as to parenting time, mother's threats toward father, mother

8.

removing the child from the court's jurisdiction and establishing geographic restrictions on mother's visitation.

## First Assignment of Error

{¶ 15} Mother contends the trial court's proceedings were defective because her husband was clearly an indispensable party, who was not named or joined as a party in the action despite being the legal father and presumed to be the natural father of the child. In support, mother cites to, inter alia, R.C. 3111.03 and 3111.07 and Civ.R. 19.

## Law

{¶ 16} R.C. 3111.03 states, in part, that a man is presumed to be the natural father of a child when the man and the child's mother are married to each other, and the child is born during the marriage. R.C. 3111.03(A)(1). "A presumption that arises under this section can only be rebutted by clear and convincing evidence that includes the results of genetic testing * * *." R.C. 3111.03(B).

{¶ 17} R.C. 3111.07(A) states, in part, "[i]f the person bringing the [parentage] action knows that a particular man is not or, based upon the facts and circumstances present, could not be the natural father of the child, the person bringing the action shall not allege in the action that the man is the natural father of the child and shall not make the man a party to the action."

{¶ 18} Civ.R. 19(A) provides:

A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among

those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest * * *. If he has not been so joined, the court shall order that he be made a party upon timely assertion of the defense of failure to join a party as provided in Rule 12(B)(7). If the defense is not timely asserted, waiver is applicable as provided in Rule 12(G) and (H). * * *

{¶ 19} Civ.R. 12 states in relevant part:

* * *

(B) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, * * * shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (7) failure to join a party under Rule 19 or Rule 19.1. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. * * *

* * *

(H) Waiver of Defenses and Objections.

* * *

(2) A defense of * * * failure to join a party indispensable under Rule 19, *

* * may be made in any pleading permitted or ordered under Rule 7(A), * *

* or at the trial on the merits.

Civ.R. 7(A), regarding pleadings, states:

There shall be a complaint and an answer; a reply to a counterclaim

denominated as such; an answer to a cross-claim, if the answer contains a

cross-claim; a third-party complaint, if a person who was not an original

party is summoned under the provisions of Civ.R. 14; and a third-party

answer, if a third-party complaint is served. No other pleading shall be

allowed * * *.

### Analysis

{¶ 20} Upon review, the record shows mother first raised the issue that her husband had not been named or joined as a party in her August 9, 2021 supplemental objections to the magistrate's decision. We note mother did not set forth the defense of failure to join an indispensable party in any pleading permitted under Civ.R. 7(A), nor did she present the defense at trial. As such, in accordance with Civ.R.19(A), the defense was not timely asserted and waiver is applicable. We therefore find mother waived the defense of failure to join an indispensable party, by not properly or timely asserting the defense.

{¶ 21} Moreover, while mother claims her husband was clearly an indispensable party, as he was the legal father and presumed to be the natural father of the child, the

11.

record reveals this presumption was rebutted by the results of genetic testing, in accordance R.C. 3111.03. Further, mother and father stipulated to the genetic test results and to a finding of father's paternity. It follows that the trial court's proceedings were not defective because husband was not joined as a party. Accordingly, mother's first assignment of error is not well-taken.

### Second Assignment of Error

{¶ 22} Mother argues the trial court erred in failing to admit her exhibit B into evidence, where father advised her that he would drop the court action if his conditions were met. She claims "the evidence indicates there were loving messages sent back and forth between the parties," and exhibit B "should have been admitted as relevant evidence to the best interest of the child." Mother submits the court incorrectly ruled the exhibit "was 'negotiations' (presumably in the nature of an offer of compromise)."

{¶ 23} Mother also contends the court erred in its determination of fact that she had threatened that if father did not drop his action, she would prevent him from seeing the child, get him fired or consult with "hit men." Mother claims father's testimony was not credible and was self-serving. In addition, she asserts father produced no evidence to demonstrate that any of the allegations were true, and he "took no steps regarding this alleged behavior which suggests that such allegation is untrue." Mother maintains the court's determination is contrary to the manifest weight of the evidence. Mother cites to no legal authority in support of her arguments.

12.

## App.R. 16, Related Case Law and Analysis

**{¶ 24}** App.R. 16 states in pertinent part:

(A) Brief of the Appellant. The appellant shall include in its brief, under the headings and in the order indicated, all of the following:

* * *

(7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.

**{¶ 25}** Upon review, mother has not cited to any case law, statute or rule in support of her arguments. "It is the duty of the appellant, not this court, to demonstrate [her] assigned error through an argument that is supported by citations to legal authority and facts in the record." *State v. Taylor*, 9th Dist. Medina No. 2783-M, 1999 WL 61619, *3 (Feb. 9, 1999). *See also Speller v. Toledo Pub. Schools Bd. of Edn.*, 6th Dist. Lucas No. L-16-1231, 2017-Ohio-7994, ¶ 56. While mother has failed to comply with App.R. 16(A)(7), which is a sufficient basis to dispose of her assignment of error, we will nonetheless address her arguments, as she has presented reasons in support of her contentions and arguments.

13.

## Standard of Review

{¶ 26} We review decisions involving the admissibility of evidence under an abuse of discretion standard. *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35, ¶ 22. An abuse of discretion is more than an error of law or judgment; it implies a court's attitude which is arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

## Law

{¶ 27} Evid.R. 408 states:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing

a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

{¶ 28} Evid.R. 408 does not prohibit all evidence concerning settlement negotiations, as such evidence may be admissible under the relevancy test of Evid.R. 401, to show a witness is biased or to impeach a witness. *Kane v. Inpatient Med. Services, Inc.*, 9th Dist. Summit No. 29087, 2019-Ohio-1975, ¶ 18. Evidence of settlement offers is also admissible when offered to test the credibility and memory of a party. *Taylor v. Davignon*, 8th Dist. Cuyahoga No. 79019, 2001 WL 1110338, *4 (Sept. 13, 2001).

{¶ 29} Evid.R. 401 provides "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

**Analysis**

{¶ 30} A review of the trial transcript shows mother's trial attorney provided the following explanation as to why exhibit B was being offered into evidence:

> This is a part of the text messages that were used in an emergency motion, but [mother] did not have a chance to show her side of it. And that's what this says, the basis of that motion was granted. This is very important evidence. It was not an offer to settle anything. It was a plea to her to come with him and to drop the case and what their plan would be.

{¶ 31} In mother's supplemental objections to the magistrate's decision, she submits, regarding exhibit B, "[c]learly [father's] priority was to maintain a relationship

with [mother] and not to have a relationship with the minor child herein as he agreed to 'dismiss the Court case' provided that [mother] divorced her husband and married him."

{¶ 32} While mother appears to argue that exhibit B shows father did not want to have a relationship with the child, this is a mischaracterization of exhibit B, as father states: "You file for divorce * * * and move in with me the same day. * * * [The child] lives with us and we become a family"; "I dismiss the court case and you sign a paternity affidavit so that I become [the child's] legal father"; "I love you and [the child]"; and "You also need to acknowledge the insanity of [your husband] being [the child's] legal father to age 18 when YOU AND I WILL BE MARRIED AND LIVING TOGETHER AS A FAMILY. WHY ON EARTH SHOULD ANOTHER MAN OUTSIDE OF US BE HIS LEGAL FATHER?"

{¶ 33} Based upon mother's challenges to exhibit B and the relevant law, we conclude the magistrate and the trial court, by affirming and adopting the magistrate's decision, did not abuse their discretion in failing to admit exhibit B into evidence.

### Credibility Determinations

### Law

{¶ 34} We review a trial court's decisions relating to child custody under an abuse of discretion standard. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). "In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be

16.

conveyed to a reviewing court by printed record." *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). Thus, in child custody cases, it is crucial that reviewing courts defer to the trial court on matters of credibility, "where there may be much evident in the parties' demeanor and attitude that does *not* translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). "[W]here an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990). A reviewing court "should be guided by the presumption that the trial court's findings were indeed correct." (Citation omitted.) *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1998).

**Analysis**

{¶ 35} A review of the record shows father testified that mother threatened him, on more than one occasion, that if he did not drop the case, she would get him fired, she would get him in trouble with the police, she knew hit men and she would leave the country with the child so father would never see the child again. Mother testified she never threatened father, stating, "Not at all. It's all made up." In later testimony, mother said she did tell father she was going to leave and he was not going to see the child, but she did not mean it. Clearly, much of this testimony is contradictory. The magistrate, who was in the best position to observe the parties' demeanors, resolved these conflicts in father's favor, finding mother was not credible. We conclude the magistrate and the trial

17.

court, by affirming and adopting the magistrate's decision, did not abuse their discretion. Accordingly, mother's second assignment of error is not well-taken.

## Third Assignment of Error

{¶ 36} Mother argues the trial court's determination that it is in the child's best interest that he be placed in father's custody is in error and contrary to the manifest weight of the evidence. She submits the court failed to take into consideration all of the best interest factors, specifically R.C. 3109.04(F)(1)(c) and (d). Mother maintains the court did not consider the child's interaction with his parents, siblings and mother's husband, or the child's bond with his friends, activities, community, preschool and mother's home, where the child has thrived for almost five years. She claims there was no testimony that the child has any such benefits at father's home, and father's home is somewhat isolated. Mother contends father works third shift so he would be absent from the home when the child is present, thus the child would spend most of his time in day care or with strangers.

{¶ 37} Mother also asserts the court failed to consider that mother facilitated and assisted with visitation and companionship between the child and father on numerous occasions. She argues there was no testimony that father would encourage a relationship between her and the child. Mother insists the court's determination results in a punishment for her actions rather than a determination of the best interest of the child. Mother also asserts the court failed to properly consider the evidence produced at trial, including her exhibits.

18.

## Law

{¶ 38} As set forth above, we review a trial court's decisions relating to child custody under an abuse of discretion standard. *Booth* at 144.

{¶ 39} R.C. 3109.04 provides that when allocating parental rights and responsibilities, "the court shall take into account that which would be in the best interest of the children." R.C. 3109.04(B)(1). The trial court has discretion to determine which factors are relevant, and is in the best position to weigh the evidence. *Hammond v. Harm*, 9th Dist. Summit No. 23993, 2008-Ohio-2310, ¶ 51. A party's status as a child's primary caregiver is a relevant factor which a court should consider in evaluating a child's best interest, but it is not a controlling factor. *Bechtol* at 23-24.

{¶ 40} When determining the best interest of a child, R.C. 3109.04(F)(1) provides that the trial court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

* * *

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

\* \* \*

(j) Whether either parent has established a residence, or is planning to establish a residence, outside [of] this state.

{¶ 41} "In order to further a child's best interest, a trial court has the discretion to limit parenting time rights." *Lumley v. Lumley*, 10th Dist. Franklin No. 09AP-556, 2009-Ohio-6992, ¶ 17. "Trial courts may restrict the time and place of visitation, determine the conditions under which parenting time will take place, and deny parenting time rights altogether if parenting time would not be in the best interest of the child." *Id.*

**Analysis**

{¶ 42} Upon review, the record includes testimony and evidence about the child, the child's half-siblings, the child's activities and interests, and the amount of time that the child spent with mother, her husband and father in the (almost) five years of the child's life. The record also includes indications of which parent is more likely to honor and facilitate parenting time rights and visitation, as there is evidence of father's difficulties in exercising his parenting time with the child, mainly due to mother's tactics and actions.

{¶ 43} We conclude, and the record shows, the magistrate considered the relevant best interest factors in arriving at her findings, many of which were based on credibility

20.

determinations. We further conclude the magistrate's findings are supported by a substantial amount of credible and competent evidence in the record. We also conclude the trial court did not abuse its discretion when it undertook an independent examination and analysis of the magistrate's decision, considered the best interest factors which impacted the child, and determined the child's best interest would be served by designating father as the residential parent of the child. Since the award of custody to father is supported by a substantial amount of credible and competent evidence, we will not reverse the award as being against the weight of the evidence. Accordingly, mother's third assignment of error is not well-taken.

## Fourth and Fifth Assignments of Error

{¶ 44} As these assignments of error are similar, we will examine them together. Mother contends the following determinations by the trial court are contrary to the manifest weight of the evidence: she was difficult in working with father to establish consistent parenting time; she denied father parenting time; she threatened or took action to remove the child from the court's jurisdiction; and on or about February 23, 2020, mother had quit her job, purchased two one-way tickets for herself and the child to Bulgaria and was attempting to board a plane as "(it appears that mother was making good on her threat to take the child to Bulgaria in order to keep the child from plaintiff)."

{¶ 45} Mother argues father's self-serving statements are the only evidence in the record to suggest the foregoing determinations are accurate. She submits the trial testimony shows the parties continually sent each other loving messages and father was

21.

only interested in spending time with her, as he never requested to spend time with the child. Mother contends this was also established in her exhibits A and B, which the court failed to consider. Mother asserts the trial testimony demonstrates father's motivation for filing this action was related to mother terminating their relationship.

{¶ 46} Regarding the "on or about February 23, 2020" findings, mother claims the dates are inaccurate. She further contends the court failed to consider her exhibit C, a written message from father to mother after she was stopped at the airport with the child, which shows father never thought she would take the child to Bulgaria without returning. She maintains father assured her, in this writing, that he would never take the child away from her, and she is a good mother.

**Analysis**

{¶ 47} With respect to mother's contention that the court failed to consider her exhibits A, B and C, the record reveals mother presented the magistrate and trial court with her evidence, and except for exhibit B, the evidence was admitted. While the magistrate and the court may not have accorded the admitted exhibits the credibility or weight that mother thought they deserved, the court acted within its discretion to evaluate all of the evidence presented and determine its significance.

{¶ 48} As to parenting time, the record shows father testified to the following: he learned the child born by reading about the birth in the newspaper; he did not immediately have a relationship with the child, although he wanted one; he contacted mother and told her he wanted a relationship with the child, but she refused; he did not

22.

meet the child until November 2016, when the child was eight months old; father was in Kalamazoo, Michigan, leaving the bowling alley where he bowls on a league when he saw mother driving up to his car; she stopped for a moment and he saw the child, then drove off; father followed mother, and she pulled into a police station, stopped, opened the back of the vehicle and showed father the child; thereafter, mother and father talked about reconciling, and he saw the child very regularly, about 10-12 days a month, until October 2019, when the relationship between mother and father ended; he asked to see the child, but mother said he would not see the child again; he saw a lawyer in November 2019, then filed the court case; he saw the child on January 10, 2020, when father and mother met to talk; he did not see the child again until the court ordered parenting time.

{¶ 49} Mother testified to the following: after the child was born, father asked for a picture of the child, so she sent one; emails were exchanged, but father never asked to see the child; in November 2016, she drove from Toledo, Ohio to Kalamazoo, Michigan, a two-hour ride, to pick up stuff that her husband had ordered online, when she stopped at the bowling alley to go to the bathroom; she ran into father in the bowling alley parking lot; she drove to a police station parking lot and stopped; father asked if the child was in the vehicle; she "did open the truck and I did let him see [the child]"; after that, father "never came to see [the child]. It was always just about him. But, he would come, like, since I was raising [the child] he's always with me. But he would come, like, every month or sometimes after that quit for two months, three months * * * it was on and off constantly. It was never a stable relationship. * * * Whenever he would see me, he would

23.

see [the child] too, but [the child] was secondary in my mind at least"; father never asked questions about the child unless she initiated it; she entered into an agreement with father about seeing the child, which she followed.

{¶ 50} The magistrate found father had a difficult time working with mother to establish consistent parenting time, and mother denied father parenting time. Upon review, we conclude there is substantial, credible and competent evidence in the record to support these findings. Although father's testimony does not always correspond with mother's testimony, the magistrate, who was in the best position to observe and listen to the parties, determined mother's testimony was not credible. We conclude the magistrate and the trial court, by affirming and adopting the magistrate's decision, did not abuse their discretion regarding the parenting time determinations.

{¶ 51} Regarding the finding that mother threatened or took action to remove the child from the court's jurisdiction, the record shows mother testified that she took the child to Chicago, Illinois, and to West Virginia, after the court ordered that she was not permitted to remove the child from the court's jurisdiction. Mother explained she "just didn't think about" and "didn't even think about [the] order."

{¶ 52} Upon review, we conclude there is substantial, credible and competent evidence in the record to support the finding. We further conclude the magistrate and the trial court, by affirming and adopting the magistrate's decision, did not abuse their discretion in finding that mother threatened or removed the child from the court's jurisdiction.

24.

**{¶ 53}** As to the "on or about February 23, 2020" findings, that mother had quit her job, purchased two one-way tickets for herself and the child to Bulgaria and was attempting to board a plane, mother testified that she bought one-way tickets to Bulgaria, she quit her job at Federal Express before she attempted to go to Bulgaria, and she and the child were stopped at the airport, on February 21, 2020, as they were getting ready to fly to Bulgaria.

**{¶ 54}** Upon review, we conclude there is substantial, credible and competent evidence in the record to support these findings. While February 23, 2020 was not the exact date that the events occurred, the use of "on or about February 23, 2020" was sufficiently precise to include all of these events. We therefore conclude the magistrate and the trial court, by affirming and adopting the magistrate's decision, did not abuse their discretion.

**{¶ 55}** Based on the foregoing, mother's fourth and fifth assignments of error are not well-taken.

### Sixth Assignment of Error

**{¶ 56}** Mother argues the trial court's determination that father's income for child support purposes is $79,040.00 is contrary to the manifest weight of the evidence and not in the best interest of the child, as father earned more in 2017 through 2020. She contends the court "has failed to follow the statute." Mother claims father was earning much more than multiplying his hourly rate times 40 hours per week times 52 times a year. She asserts the court's child support calculation was in error, and father's 2020

25.

income figure should have been used. In support, mother cites to four exhibits offered by father at trial, three of the exhibits are father's W-2s for 2017, 2018 and 2019, and the other exhibit is an earnings statement for father with a pay date of January 8, 2021.

## Magistrate's Decision

{¶ 57} In her decision, as it relates to child support, the magistrate found father: is employed full time, earning $38.03 per hour; has two other children; and pays for health insurance for himself and his children. The magistrate found mother quit her job at FedEx when she decided to take the child to Bulgaria, and she is voluntarily underemployed and able to work. The magistrate set forth "[a] child support guideline worksheet, marked as Joint Exhibit, was completed based on the facts adduced herein, and imputing mother's income at minimum wage at 40 hours/week."

## Judgment Entry

{¶ 58} In its judgment entry, as it relates to child support, the court set forth that it conducted a de novo review of the matter, including the record, the trial transcript, mother's objection to the magistrate's decision and father's response. The court found mother's objection unpersuasive, and the magistrate's child support order appropriate. The court observed the magistrate properly included father's current income, mother's voluntary underemployment and applicable deviations, hence the court found no reason to disturb the Child Support Computation Worksheet.

26.

**Analysis**

{¶ 59} Upon review, mother has not cited to any case law, statute or rule support of her arguments, nor has she offered reasons to support her contentions and arguments. Thus, mother failed to comply with App.R. 16(A)(7). Moreover, we observe that mother set forth these same arguments in her objections and supplemental objections to the magistrate's decision, again citing no legal authority and presenting no reasons to support her contentions. We therefore decline to address her arguments. Accordingly, mother's sixth assignment of error is not well-taken.

**Seventh Assignment of Error**

{¶ 60} Mother argues the following decisions by the trial court are contrary to the manifest weight of the evidence: mother's parenting time and visitation with the child should only occur within the court's jurisdiction and the Michigan area where father resides, unless father consents in writing; and the child's passport must be given to father.

{¶ 61} Mother asserts she would not be able to take the child on vacation, out of the state or out of the country, which is an infringement "on her constitutional right as well as her parental rights." She claims there is no evidence before the court that father was concerned about mother removing the child from the court's jurisdiction on a permanent basis. Rather, mother maintains the evidence shows the parties argued, father filed a motion in anger then later confided to her that he regretted it, he apologized and "he did not wish to take the child away from such a wonderful mother."

27.

{¶ 62} Mother explains she took the child to Chicago, Illinois, to the dinosaur exhibit "after being in lockdown due to the national pandemic," she took the child for a same-day trip as he loves dinosaurs, and mother "had forgotten that she was not supposed to leave the jurisdiction of the court." Mother also contends that father "merely mentions in passing * * * about [mother] be acquainted with people in Baja, Mexico," and he did not think she was going south. Mother submits there should be no restrictions on her ability to transport the child to other areas.

**Analysis**

{¶ 63} Upon review of the record, we find there was sufficient, credible evidence to support the magistrate's decision and trial court's judgment. Father testified about specific threats mother made to take the child to Bulgaria and father would never see the child again, and to leave the United States with the child via the southern border. Exhibits were introduced which substantiated a great deal of father's testimony. Mother testified she quit her job, purchased one-way tickets to Bulgaria, and went to the airport with the child to take him to Bulgaria. In addition, mother testified she traveled out of the court's jurisdiction with the child, to Chicago, Illinois and to West Virginia, because she did not think about the court order which prohibited her to do so. Evidence was also presented which indicates mother "won't live by a court order."

{¶ 64} Some the evidence presented is conflicting. However, the magistrate resolved these conflicts, finding mother's testimony was not credible. Based on the evidence in the record, we conclude the magistrate and the trial court did not abuse their

28.

discretion by placing restrictions on mother taking the child outside of the court's

jurisdiction, unless father consents in writing, and in requiring father to possess the

child's passport.  Accordingly, mother's seventh assignment of error is not well-taken.

{¶ 65} For the foregoing reasons, the judgment of the Lucas County Court of

Common Pleas, Juvenile Division, is affirmed.  Appellant is ordered to pay the costs of

this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

Gene A. Zmuda, J.

Myron C. Duhart, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.